# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 3086 | DATE | May 12, 2004 |
| CASE TITLE | Javar Calvin    Vs    Sheriff of Will County | | |

**MOTION:**   [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Hearing

(5) ■ Status hearing set for 5/26/04, at 9:00 a.m.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]

Memorandum opinion and order entered. Accordingly, plaintiffs' motion for class certification is granted with respect to subclasses II and III, and denied with respect to subclass I.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| X | Notices mailed by judge's staff. | | | MAY 17 2004 | |
| | Notified counsel by telephone. | | | date docketed | |
| | Docketing to mail notices. | | | | 18 |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | | | |
| GDS | courtroom deputy's initials | 2004 MAY 13 PH 1:02 | | date mailed notice | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAVAR CALVIN, WILLIAM VIRBLE MOORE, and CHARLES DAVIS, | ) ) ) | |
| Plaintiffs, | ) ) ) | No. 03 C 3086 |
| v. | ) ) | Judge Robert W. Gettleman |
| SHERIFF OF WILL COUNTY and WILL COUNTY, ILLINOIS, | ) ) ) | **DOCKETED** |
| Defendants. | ) ) ) | MAY 17 2004 |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiffs Javar Calvin, William Moore and Charles Davis, individually and on behalf of

all others similarly situated, filed this putative class action pursuant to 42 U.S.C. § 1983, alleging

that they were unlawfully arrested and then strip searched while in the custody of defendant, the

Sheriff of Will County. Plaintiffs seek monetary damages for the deprivation of rights secured

by the Fourth and Fourteenth Amendments to the Constitution of the United States.

Plaintiffs have moved pursuant to Fed. R. Civ. P. 23 for certification of three subclasses

defined any person "who, from May 8, 2001 (two years before filing this action) to the date of

entry of judgment have been, is [sic], or will be:

> I. Arrested on an erroneous computer indication that a warrant has been issued for his (or her) arrest for failure to appear in court in a misdemeanor or traffic case and is held overnight at the Will County Jail;
>
> II. Arrested on a warrant issued for failure to appear in a misdemeanor or traffic case and, following arrival at the Will County Jail, is or was strip searched without any individualized finding of reasonable suspicion or probable cause that he was concealing contraband or weapons.
>
> III. In the custody of the Sheriff of Will County of a traffic or misdemeanor charge (or on a warrant issued for failure to appear on a traffic or misdemeanor

<span style="float:right">*18*</span>

charge), taken to court from the Will County Jail, ordered released by the Court or became entitled to release because the charge on which he (or she) was being held was no longer pending or was dismissed at the hearing, was ordered released on his (or her) own recognizance, or had posted bail, was sentenced to time served, was acquitted or was otherwise entitled to release, was not the subject of any other pending case or cases which imposed any condition of release other than personal recognizance, was not the subject of any detainer or warrant, was returned in shackles to the Will County Jail to be processed out of the custody of the Sheriff of Will County, and Was [sic] strip searched without any individualized finding of reasonable suspicion that he (or she) was concealing contraband or weapons."

Defendants oppose certification, arguing that: (1) subclass I does not satisfy the numerosity requirements of Rule 23(a); (2) subclass II does not satisfy the typicality requirement of Rule 23(a); and subclasses II and III do not have a question of law or fact common to the class that predominates over individual questions of law or fact, thus failing to satisfy Rule 23(b)(3).

## FACTS

According to plaintiffs' second amended complaint, each plaintiff was arrested because defendants maintained records that mistakenly indicated an outstanding arrest warrant when no such warrant actually existed. Upon arrival at the Will County Adult Detention Facility ("WCADF")[1], each member was allegedly strip searched pursuant to the Sheriff's policy.

Plaintiffs Calvin and Moore repeatedly protested their arrests, insisting that they had no outstanding warrants. Within two days of each plaintiff's arrest, a judge concluded that each detention was in error and ordered each plaintiff released. After the release orders issued, WCADF personnel allegedly maintained each plaintiff in handcuffs and shackles and returned

---

[1]Plaintiffs references to "Will County Jail" in the definition of their subclasses have been replaced with "Will County Adult Detention Facility," which defendants submit is the proper name of the facility to which plaintiffs were taken.

him to WCADF. At the WCADF, personnel allegedly strip searched each plaintiff, returning him to a detention cell for several hours until his eventual release that day.

Plaintiffs contend that defendants' failure to use a more accurate system caused incorrect warrants to issue unchecked, thus amounting to deliberate indifference and the unreasonable detention of subclass I plaintiffs. Plaintiffs also maintain that the Sheriff's policy that allowed strip searches without reasonable suspicion that the arrestee possessed concealed contraband or weapons deprived each subclass II plaintiff of his Fourth Amendment rights. Last, plaintiffs contend that the Sheriff's policy of shackling and strip searching persons who were entitled to immediate release deprived each subclass III plaintiff of his Fourth Amendment rights.

## DISCUSSION

Fed. R. Civ. P. 23 requires a two step analysis to determine whether a class should be certified. First, Rule 23(a) requires plaintiffs to demonstrate: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Harriston v. Chicago Tribune Co., 992 F.2d 697, 703 (7th Cir. 1993). Second, one of Rule 23(b)'s conditions must be satisfied. Cwiak v. Flint Ink Corp., 186 F.R.D. 494, 496 (N.D. Ill. 1999). In the instant case, Rule 23(b)(3) requires plaintiffs to demonstrate that: "1) common questions must predominate over any questions affecting only individual members; and 2) class resolution must be superior to other methods for the fair and effective adjudication of the controversy." Portis v. City of Chicago, 2003 WL 22078279, *3 (N.D. Ill. Sept. 8, 2003) (quoting Joncek v. Local 714 International of Teamsters Health and Welfare Fund, 1999 WL 755051, *7 (N.D. Ill. Sept. 3, 1999)). Plaintiffs have the burden of showing compliance with Rule 23. Cwiak, 186 F.R.D. at 496. Defendants challenge certification of each subclass on different grounds.

### 1. Subclass I - The "Bad Warrant" Subclass

Defendants oppose certification of subclass I, the "bad warrant" subclass, arguing that plaintiffs fail to demonstrate numerosity. A class may be certified only if the class is so numerous as to make joinder of all members impracticable. Fed. R. Civ. P. 23(a)(1); Cwiak, at 496. Defendants contend that discovery shows only a handful of potential class members, namely the specific plaintiffs and a few other possible, yet unnamed, members. Defendants point to Sergeant Vitek's deposition testimony that, in his opinion, over the past four years, the Sheriff's records probably show less than five instances of a quashed warrant arrest.

Plaintiffs contend that at least 75 people compose the first subclass, emphasizing the deposition testimony of Sergeant Brian Fink, who acknowledged that, perhaps as often as once a week, "a person [is] brought into the jail on a warrant and says that, 'That warrant was quashed; I shouldn't be here.'" Sergeant Fink added, however, that "everybody says that the warrant isn't any good." Plaintiffs also direct the court's attention to plaintiff Davis' deposition, in which he testified that the judge who ordered his release said he was "about the 201st person coming in here getting falsely arrested."

The Fink and Davis deposition excerpts do not persuade the court that the first subclass is sufficiently numerous to merit class treatment. The Fink deposition testimony addresses only how many people <u>complain</u> that they have been brought in invalid warrants; his testimony does not address the number of warrants that actually were quashed. The only evidence before the court regarding the number of actual quashed warrant arrests, which was provided by defendant, indicates that there have been only five incidents. Plaintiffs concede that five incidents alone do not satisfy the numerosity requirement of Rule 23(a).

Although plaintiffs are not required to show the exact number of people included in the proposed class, Cwiak, 186 F.R.D. at 494, the impracticability of joinder must be established by more than mere speculation. See id. at 496 ("[I]mpracticability of joinder must be positively shown, and cannot be speculative.") (citations omitted). The court thus denies plaintiffs' motion to certify subclass I. If further discovery reveals a greater number of actual quashed warrant arrests that would satisfy the numerosity requirement, however, plaintiffs may renew their motion to certify subclass I.

### 2. Subclass II - The "Post-Arrest Strip Search" Subclass

Defendants oppose certification of subclass II, the "post-arrest strip search" subclass, arguing that plaintiffs fail to demonstrate, (1) typicality, and (2) a common question of law or fact that predominates over individual issues. The court addresses each of these arguments in turn below.

A class may be certified only if the claims of the representative parties are typical of the claims of the class. Fed. R. Civ. P. 23(a)(3); De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983). Defendants argue that the class definition is overbroad and indefinite, thus making it too difficult for the court to "determine whether a particular individual is a member of the proposed class." See Clay v. American Tobacco Co., 188 F.R.D. 483, 490 (S.D.Ill. 1999). In arguing that the class is indefinite, defendants hypothesize a split in the class between those members who were strip searched and released on bond and those members who were strip searched and admitted as WCADF inmates.

The court fails to see how the interests of the named plaintiffs, who were strip searched prior to being admitted as inmates, are not aligned with the interests of those class members who

5

were strip searched prior to posting bail. Plaintiffs are challenging the policy of strip searching each person arrested on a warrant for failure to appear in a misdemeanor or traffic case without first making an individualized finding of reasonable suspicion or probable cause that he or she was concealing contraband or weapons. According to plaintiffs, the strip searches allegedly occurred "upon arrival," and the challenged policy applied to every arrestee regardless of whether he was later released on bond or admitted as a WCADF inmate. As plaintiffs point out, every member of the "post-arrest strip search" subclass advances the same claim that the Sheriff's uniform strip search policy (specifically, to strip search all persons arrested on "failure to appear" warrants) is unconstitutional as applied to persons in custody on warrants issued in traffic and misdemeanor cases. The court thus concludes that plaintiffs have satisfied the typicality requirement.

Defendants further argue that, even if sufficiently definite, certification of subclass II should be denied because it fails to satisfy Rule 23(b)(3)'s requirement that questions of law or fact common to the members of the class must predominate over any questions affecting only individual members. According to defendants, "Requiring this court to make an individualized determination of the constitutionality of the search conducted by WCADF personnel, as applied to each potential class member, renders the proposed second subclass unmanageable." In this vein, defendants argue that the determination of whether a person is a member of subclass II cannot be made without hearing evidence on the circumstances of each person's arrest and search, which would include an individualized inquiry into whether there was reasonable suspicion that each class member had some hidden drugs or weapons at the time of the search.

6

Defendants misconceive the way in which reasonable suspicion factors into the class. Plaintiffs allege that under the uniform strip search policy adopted by the Sheriff, jail personnel never undertook reasonable suspicion or probable cause inquiries. Thus, the ultimate legal question is not whether jail personnel made erroneous reasonable suspicion determinations regarding each individual, but whether the Sheriff's policy avoided all such inquiry, thus depriving those individuals of their Fourth and Fourteenth Amendment rights. The question of the validity of the Sheriff's policy thus predominates over any "individualized questions." See Blihovde v. St. Croix County, Wis., 219 F.R.D. 607, 620 (W.D. Wis. 2003) ("[T]he case law suggests that when the class is challenging a uniform policy, the validity of that policy predominates over individual issues and class certification is appropriate").[2] See also Mack v. Suffolk County,191 F.R.D. 16, 24 (D.Mass. 2000) ("To require plaintiff to prove that each individual search was unsupportable, as well as indiscriminate, would be unnecessary and unfair. Given that these [persons] were routinely strip searched, the burden rests on defendants to demonstrate that particular searches were reasonable.") (citing Doe v. Calumet City, Ill., 754 F. Supp. 1211 (N.D.Ill. 1990)).

For these reasons, the court certifies subclass II as:

---

[2]As plaintiffs point out, the proposed class definition excludes persons who were strip searched based on "reasonable suspicion." Accordingly, in the event that defendants believe that specific searches or classes of searches had a reasonable antecedent justification, defendants are not precluded from offering proof that the subjects of those searches should be excluded from the class. See, e.g., Doe v. Calumet City, Ill., 754 F. Supp. 1211, 1220 (N.D.Ill. 1990). Because Sheriff's Policy and Procedure § 5080 requires elaborate documentation of strip searches conducted on the basis of "reasonable belief" that the inmate is concealing contraband or weapons, identifying such individuals should not be overly burdensome or require extensive factfinding by the parties.

Any person who, from May 8, 2001, to the date of entry of judgment has been, is, or will be:

> Arrested on a warrant issued for failure to appear in a misdemeanor or traffic case and, following arrival at the Will County Adult Detention Facility, is or was strip searched without any individualized finding of reasonable suspicion or probable cause that he or she was concealing contraband or weapons.

### 3. Subclass III - The "Post-Release Strip Search" Subclass - Rule 23(b)(3)

Defendants oppose certification of subclass III, the "post-release strip search" subclass, arguing that plaintiffs fail to demonstrate "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

Plaintiffs claim deprivation of liberty, personal injuries and lost wages as damages in the instant case. Defendants argue that personal injuries and lost wages are individualized questions according to each proposed subclass member's particular circumstances. Defendants concede that certification of a class can be correct even if the class members are entitled to different levels of injury and damages. De La Fuente, 713 F.2d at 233; Gary v. Sheahan, 1999 WL 281347 (N.D. Ill. March 31, 1999). Nonetheless, defendants argue that certification in the instant case is improper because plaintiffs fail to present detailed evidence that each member's injuries would be of similar type and severity.

According to defendants, the level of psychological trauma inflicted on each class member varies depending on the individual's particular mental state prior to the strip search (pointing to the difference in the reaction of a first-time arrestee and that of one arrested on

8

numerous prior occasions and familiar with the process). The fact that damages may vary based on each plaintiff's mental state is not, however, a sufficient reason to deny certification, because the court may bifurcate the lawsuit so that liability is determined first. If defendants are found liable, the court may then revisit the damages issue, including whether to certify another class or subclasses, or hold individual hearings, for the purpose of resolving damages. Blihovde, 219 F.R.D. at 621 (citing Denberg v. United States R. Retirement Bd., 696 F.2d 1193, 1207 & n.7 (7th Cir. 1983)). See also Portis v. City of Chicago, 2003 WL 22078279, *3 (N.D. Ill. 2003) ("[T]he possibility of individualized damage inquiries does not defeat class certification even if individual hearings ultimately may be required.") (quoting Williams v. Rizza Chevrolet-Geo, Inc., 2000 WL 263731, at *3 (N.D. Ill. 2000)).

Defendants' remaining argument for denying certification of subclass III challenges "the possibility that plaintiffs believe they should have been released directly from the courthouse" rather than being returned to the WCADF general population for processing, which entitles defendants to strip search the inmates for contraband. Defendants argue that the returning inmates cannot be held in a holding cell because they must be allowed to collect their personal belongings from their cells in general population. Plaintiffs respond that persons arrested on warrants are unlikely to have personal property to collect upon release because their property is "taken from [them] and held in the property room" rather than their cells. Because this factual dispute goes directly to the merits of plaintiffs' challenge of the Sheriff's policy of returning released inmates to general population (and thus subjecting all of them to strip searches), it is premature. "[A] court may not refuse to certify a class on the ground that it thinks the class will eventually lose on the merits." Loeb Industries, Inc. v. Sumitomo Corp., 306 F.3d 469, 480 (7th

9

Cir. 2002) (citing Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 177-78 (1974)). Accordingly, the court need not decide whether the Sheriff's policy passes muster before certifying subclass III.

For these reasons, the court certifies subclass III[3] as:

Any person who, from May 8, 2001, to the date of entry of judgment has been, is, or will be:

> In the custody of the Sheriff of Will County on a traffic or misdemeanor charge (or on a warrant issued for failure to appear on a traffic or misdemeanor charge), taken to court from the Will County Adult Detention Facility, ordered released by the court, or otherwise became entitled to immediate release, was returned to the Will County Adult Detention Facility to be processed out of the custody of the Sheriff of Will County, and was strip searched without any individualized finding of reasonable suspicion that he or she was concealing contraband or weapons.

## CONCLUSION

For the reasons stated above, plaintiffs' motion for class certification is granted with respect to subclasses II and III, and denied with respect to subclass I. This matter is set for a report on status on May 26, 2004, at 9:00 a.m.

**ENTER:**     **May 12, 2004**

**Robert W. Gettleman**
**United States District Judge**

---

[3]In the interest of clarity, the court, sua sponte, has simplified the definition of subclass III.