IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAVAR CALVIN, WILLIAM VIRBLE MOORE, and CHARLES DAVIS, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>) |
| SHERIFF OF WILL COUNTY and WILL COUNTY, ILLINOIS, | )<br>)<br>) |
| Defendants. | )<br>)<br>) |

Case No. 03 C 3086

Judge Virginia M. Kendall

## MEMORANDUM OPINION AND ORDER

Defendants Will County and the Sheriff of Will County (collectively "Defendants") request that this Court amend the December 16, 2005 Memorandum Opinion and Order[1] to certify the order for interlocutory appeal pursuant to 28 U.S.C. §1292(b). Because the issues raised in this appeal meet the requirements for certification, the motion to amend the order is granted.

### *Background*

Plaintiffs Javar Calvin, William Virble Moore, and Charles Davis (collectively "Plaintiffs") brought a class action suit under 42 U.S.C. §1983 against Will County, Illinois and the Will County Sheriff, alleging that Defendants violated Plaintiffs' Fourth Amendment rights by conducting strip searches in a Will County detention facility. Specifically, Plaintiffs challenged Will County "Policy No. 5080," created by the County in response to Illinois statute 725 ILCS 5/103-1(c), which provides in relevant part:

---

[1] The Memorandum Opinion and Order is a published opinion. *See Calvin v. Will County*, 405 F. Supp. 2d 933 (N.D. Ill. 2005).

> (c) No person arrested for a traffic, regulatory or misdemeanor offense, except in such cases involving weapons or a controlled substance, shall be strip searched unless there is reasonable belief that the individual is concealing a weapon or controlled substance.

725 ILCS 5/103-1(c). However, the statute later states that the provision of section (c) "shall not apply when the person is taken into custody by or remanded to the sheriff or correctional institution pursuant to a court order." 725 ILCS 5/103-1(j).

The Court[2] certified two subclasses in the action: the "Post-Arrest Strip Search" subclass and the "Post-Release Strip Search" subclass. *See* December 16, 2005 Memorandum Opinion and Order at 2 (hereafter "Memorandum Opinion"). Both classes contain persons detained on misdemeanor or traffic offenses that did not involve weapons or controlled substances. Both classes contain persons who were detained after a failure-to-appear warrant ("FTA Warrant") had been issued against them, and after they had been given a reasonable time to post bond and were unable or unwilling to do so. After providing notice to the classes and commencing discovery, Plaintiffs moved the Court to bifurcate discovery on the issues of liability and damages. *See* Docket No. 39. The Court granted the motion, and Plaintiffs moved for summary judgment solely on the issue of liability. *See* Docket No. 49.

Defendants opposed summary judgment on liability and argued that material facts existed meriting trial or, in the alternative, that Defendants were entitled to judgment as a matter of law. The Court determined in its Memorandum Opinion that there were no genuine issues of material fact, because Will County followed Policy No. 5080, and a Will County officer testified to the manner

---

[2] At that time, the case was assigned to a different judge in this district. On January 23, 2006, three days after Defendants filed the Motion discussed herein, the case transferred to the present judge as part of the Executive Order creating the judge's initial calendar.

2

of the searches and that the County conducted the strip searches on the members of the Plaintiff class without reasonable suspicion that they carried weapons or contraband. Memorandum Opinion at 7. The Court concluded that the dispute could be resolved as a matter of law on the "reasonableness" of the search in light of the undisputed facts and the justifications for the policy. The Court held as a matter of law that the Will County policy and practice violated the Fourth Amendment and granted summary judgment on liability in favor of Plaintiffs.

Within one month of the issuance of the Court's Memorandum Opinion and Order, Defendants filed their motion to amend the order to certify for interlocutory appeal the question of Defendant's liability under 42 U.S.C. §1983. *See* Defendants' Motion to Amend the Memorandum Opinion and Order Dated December 16, 2005 to Include Certification for Interlocutory Appeal at 4 (hereafter "Def. Mot. Amend"). Defendants believe there are two "central issues" in this case warranting appeal:

> The first is whether conducting strip searches of all individuals who were arrested under [Failure to Appear, or "FTA"] warrants in misdemeanor and traffic cases, only after they have been unable or unwilling to post bond and thus are required to be housed with other inmates violates a person's Fourth Amendment constitutional rights.
>
> The second issue is whether conducting strip searches of all individuals who had been held at the facility, taken to court for a hearing, placed in contact situations with third-parties outside of the County's control, ordered released by a judge, and then returned to the Facility for an [sic] processing of their release violates a person's Fourth Amendment constitutional rights.

Def. Mot. Amend at 4. The parties have not yet conducted discovery on the issue of damages.

### *Legal Standard*

A district court order not otherwise appealable may be reviewed by the Court of Appeals in those cases where there exists 'a controlling question of law as to which there is substantial ground

3

for difference of opinion and [where] an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. §1292(b). The district court may certify an order for interlocutory appeal at its discretion, if a request for review of this kind has been brought within a reasonable time following the entrance of the order. *Id.*, *Richardson Elecs., Ltd. v. Panach Broad. Of Pennsylvania, Inc.*, 202 F.3d 957, 958 (7th Cir. 2000).

### *Discussion*

In order for a district court to certify a question for interlocutory appeal under 28 U.S.C. §1292(b), "there must be a question of *law*, it must be *controlling*, it must be *contested*, and its resolution must promise to *speed up* the litigation." *Ahrenholz v. Board of Trustees of the Univ. of Ill.,* 219 F.3d 674, 675 (7th Cir. 2000) (emphasis in original); *see* 28 U.S.C. § 1292(b).[3] The Seventh Circuit has instructed district courts not to certify interlocutory orders under § 1292(b) "[u]nless *all* these criteria are satisfied...." *Id.* at 676 (emphasis in original).

The parties agree that the constitutionality of the search is controlling. The parties also agree that a reversal would speed up the litigation, because a reversal by the Court of Appeals granting summary judgment for Defendants would terminate the case and obviate the need for the damages portion of discovery in this matter. Therefore, the Court will focus on the two portions of the *Ahrenholz* test about which the parties do not agree: whether the issue to be appealed is a question of law, and whether it is contested.

---

[3]Plaintiffs do not dispute that Defendants met the fifth, non-statutory requirement for certification under Section 1292(b), that the petition for certification be filed within a reasonable time. *Ahrenholz*, 219 F.3d at 675-76.

4

*A. Question of law*

A district court may certify an interlocutory order for appeal only if the appeal concerns a "question of law." *Ahrenholz*, 219 F.3d at 677. In order to be a "question of law" meriting certification, the question should be a "reference to a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine" that "the court of appeals could decide quickly and cleanly without having to study the record. . ." *Id.*

As a threshold matter, the order to be appealed is an order for summary judgment. As such, Plaintiffs argue that the mere fact that this order is one of summary judgment should render certification for interlocutory appeal inappropriate because any determination would require appellate review of a factual record. *See Ahrenholz*, 219 F.3d at 677 ("[T]o decide whether summary judgment was properly granted requires hunting through the record compiled in the summary judgment proceeding to see whether there may be a genuine issue of material fact lurking in there.").

However, Defendants' response to the summary judgment motion did not contest the issues of material fact in this case - the text of the policy, and the deposition testimony by a Will County officer as to the county's implementation of the written policy. Defendants' motion for interlocutory appeal essentially concedes that no material facts are in dispute, as evidenced by Defendants' decision to propose two "central" questions to send to the court of appeals. These two questions, reprinted above, attempt to condense the Court's 26-page opinion into a single paragraph that would qualify as "questions of law." Were the appellate court to answer these two "central" questions in Defendants' favor, the appellate court presumably would reverse the Court and grant summary judgment in favor of Defendants, rather than remanding the case for trial on the merits.

While Defendants' defined issues do not accurately reflect the issues in the case because neither includes the uncontested fact that the Will County officers lacked reasonable suspicion of weapons or contraband, the fact that Defendants have moved to condense the opinion to two "central" questions of law is sufficient basis in the Court's view that all parties agree that the issues before the Court at this time are "questions of law" that are appropriate for resolution on appeal and do not require the Court of Appeals to review the factual record any farther than the limited uncontested facts designated in the Memorandum Opinion.

### B. Contested

Defendants argue that the constitutionality of conducting blanket strip searches on pre-trial detainees who were (i) charged with misdemeanor and traffic offenses, (ii) have arrest warrants for failure to appear at a court hearing, (iii) are unable to post bond, and (iv) are housed in a general jail population, constitutes a "contested" question of law meriting interlocutory appeal. A question of law is contested if there exists a "substantial ground for difference of opinion" concerning the legal question to be appealed:

> A question of law is contestable if there are substantial conflicting decisions regarding the claimed controlling issue of law, or the question is not settled by controlling authority and there is a substantial likelihood that the district court ruling will be reversed on appeal.

*United States v. Moglia*, No. 02 C 6131, 2004 WL 1254128 (N.D. Ill. June 7, 2004).

Defendants conceded during the proceedings on summary judgment that Defendants did not have reasonable suspicion that "any of the class members had contraband or weapons." Memorandum Opinion at 7. Defendants rely on three primary facts to show that despite the lack of reasonable suspicion of weapons or contraband, the circumstances in Will County are different than

those discussed in the controlling precedent in this circuit. First, the county court had issued an FTA warrant for each Plaintiff class member. Second, none of the Plaintiff class members could post bond after a reasonable period, or in some cases refused to post bond. Third, each of the members of the Plaintiff class were housed in a group detention facility while awaiting a court hearing.

Defendants argue that each of the three elements stated above combine to justify the need to keep the search policy. Each of the class members had an outstanding FTA warrant at the time they were searched, so the officers were under a duty to arrest the person and hold them until one of two events occurred: either the persons posted bond, or they went before a judge. As none of the class members could or would post bond, the officers therefore were required to hold the class members until such time as they could go before a judge. And because Will County has general jail facilities, the officers had a duty to maintain security in a general jail population. This combination of factors, claim Defendants, justify the blanket search policy codified in Policy 5080.

Defendants claim that there exists a "substantial ground for difference of opinion" with respect to the search policy at issue, because there exists a split of authority between the state of Illinois and the Seventh Circuit with respect to these three qualifications. Illinois amended its statute governing rights on arrest in 1981 to include the subparagraphs at issue in this case:

> (c) No person arrested for a traffic, regulatory or misdemeanor offense, except in cases involving weapons or a controlled substance, shall be strip searched unless there is reasonable belief that the individual is concealing a weapon or controlled substance.
> (j) The provisions of subsections (c) through (h) of this Section shall not apply when the person is taken into custody by or remanded to the sheriff or correctional institution pursuant to a court order.

7

725 ILCS 5/103. Two state court opinions, each published during the last two years, explicitly upheld the constitutionality of the amended Illinois statute in circumstances in which a person (i) was arrested pursuant to a civil or misdemeanor FTA, (ii) did not post bond, and (iii) had to be housed in a general jail population. *See People v. Mitchell,* 353 Ill. App. 3d 838, 819 N.E.2d 1252 (2d Dist. 2004); and *People v. Johnson*, 334 Ill. App. 3d 666, 778 N.E.2d 772 (4th Dist. 2002). Both *Mitchell* and *Johnson* addressed the constitutionality of 725 ILCS 5/103-1 in the context of a motion to suppress evidence uncovered during the searches, as opposed to the class action scenario here.

*Mitchell* and *Johnson* both held that civil or misdemeanor warrants are "court orders" that comply with the Illinois statute, and the strip searches conducted for jail security did not violate the Fourth Amendment. In *Johnson*, police discovered that the passenger in a car stopped for a routine traffic violation had an outstanding civil warrant. *Johnson*, 334 Ill. App. 3d at 670. Police arrested the passenger pursuant to the civil warrant and strip searched him before placing him in a general jail population, revealing illegal substances in the passenger's possession. *Id.* The Court found that the strip search was constitutional despite the police officer's testimony that he had no reasonable suspicion that the passenger had controlled substances, because the defendant "would be placed with other arrestees in a common holding area" and "defendant's placement in the general jail population was imminent." *Id.* At 674. Likewise, the court in *Mitchell* upheld a strip search conducted upon an individual with an outstanding misdemeanor warrant, explicitly stating that the individual was arrested not for a new offense, but 'pursuant to a misdemeanor arrest warrant, which meets the 'court order' requirement of section 130-1(j)." *Mitchell*, 353 Ill. App. 3d at 840-41.

On the other hand, strip searches of misdemeanor traffic offenders are illegal under prevailing law in this circuit without individual suspicion that these individuals may be carrying weapons or

8

contraband. *Tinetti v. Wittke*, 479 F. Supp. 486 (N.D. Ill. 1979) *affirmed and adopted per curiam* 620 F.2d 160 (7th Cir. 1980) (strip searches of persons arrested and detained for non-misdemeanor traffic offenses without probable cause to believe the persons are concealing weapons or contraband are unconstitutional); *Mary Beth G v. City of Chicago*, 723 F.2d 1263 (7th Cir. 1983) (holding that strip searches of misdemeanor offenders without reasonable belief that they might be carrying contraband are unconstitutional).[4] Defendants cannot cite to a federal case holding that the issuance of a bench warrant can substitute for the requirement of reasonable suspicion that an arrested individual possesses weapons or contraband.

As the Court stated in its Memorandum Opinion: "[I]t is difficult to reconcile prohibiting automatic strip searches of people arrested on traffic and misdemeanor charges - as the Illinois statute, case law, and Policy 5080 all do - with allowing the strip search of people arrested for a failure to appear regarding the identical charges." Memorandum Opinion at 13. Nonetheless, this contradiction has been codified in Illinois 725 ILCS 5/103(c) and (j), and has been upheld expressly by two recent Illinois appellate court decisions.

Both decisions recognize that prison officials who are required to hold an arrestee pursuant to a Court order for failure to appear must be afforded the control necessary to maintain a safe and secure environment for all individuals housed within their walls. Once a court order mandates that the prison official hold that arrestee, such that the prison must place the arrestee within its population for an undefined period of time, the Illinois courts recognize the over-riding need to search the

---

[4] Defendants rely upon *Roscom v. City of Chicago*, 570 F. Supp. 1259 (D.C. Ill. 1983). *Roscom* upheld the strip search of a person legally arrested for deceptive practices. Specifically, *Roscom* stated in upholding the search that "irrespective of the crimes charged against pre-trial detainees, Courts may reasonably consider any of them could be carrying weapons or contraband, either brought with the detainee into the County Jail or procured from other persons in the holding cell." *Id.* at 1262.

9

arrestee for security purposes. No Seventh Circuit opinions have addressed the Illinois law or the factual scenario at issue here, and the case law of this circuit dates from the early 1980's, in one case prior to the Illinois law's amendment.[5] As such, the Court believes that this difference creates a "contested issue of law" meriting certification for interlocutory appeal pursuant to § 1292(b).

WHEREFORE, the Court finds that the Memorandum Opinion and Order of December 16, 2005 meets the requirements for interlocutory appeal. The Order involves an issue of law that is contested and controlling, and its resolution will substantially speed the termination of the litigation. The Court grants the motion of Defendants and amends the order to permit interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

So ordered.

/s/ Virginia M. Kendall
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Dated: April 14, 2006

---

[5] Plaintiffs cite to an unpublished recent district case from this district on point and in their favor, *Gary v. Sheahan*, No. 96 C 7294, 1998 WL 547116 at *13 (N.D. Ill. Aug. 20, 1998):
> [I]f jail security is to justify the search the detainee must present some threat to jail security. The facts in the cases where searches have been upheld suggest some reasonable cause on the part of the authorities to suspect the detainees might be trying to smuggle weapons or contraband into the jail. . . A person detained for a violent crime may presumptively be suspected of carrying a weapon. However, when an arrestee is being detained briefly awaiting the posting of bond on a traffic or misdemeanor offense, generally a strip-search can be made only on reasonable suspicion that the attestee [sic] is carrying or concealing a weapon or contraband, unless authorities can demonstrate that misdemeanants regularly pose a threat to jail security."